JAYNE LLULL, Employee, Plaintiff,
v.
ROSE FURNITURE, Employer, AMERISURE INS. COMPANIES, Carrier, Defendants.
No. COA09-804.
Court of Appeals of North Carolina.
Filed April 20, 2010.
Alexander Ralston, Speckhard & Speckhard, L.L.C., by Stanley E. Speckhard, for plaintiff.
Orbock Ruark & Dillard, PC., by Roger L. Dillard, Jr., and Jason P. Burton, for defendants.

UNPUBLISHED OPINION
ELMORE, Judge.
This appeal arises from an opinion and award of the Full Commission entered 11 March 2009. The Full Commission, in reversing the opinion and award of the Deputy Commissioner, found that Jayne Llull (plaintiff) had sustained a compensable injury by accident arising out of and in the course and scope of her employment, which resulted in a fracture to her left hip as well as foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine. The Full Commission ordered plaintiff's employer, Rose Furniture (defendant-employer), and defendant-employer's insurance carrier, Amerisure Insurance Companies (defendant-carrier; together, defendants), to pay to plaintiff temporary total disability, less plaintiff's earnings from brief employment, medical expenses, reasonable attorney's fees, and costs. Defendants appeal from the opinion and award.

Background
Plaintiff began working as a furniture salesperson for defendant-employer in January 1987 and continued in that position until her resignation in January 2007. Plaintiff's employment with defendant-employer involved working both the sales floor and sales telephone lines, with less time spent answering phones earlier in her employment. Working the floor for defendant-employer entailed waiting on customers on the 200,000-square-foot sales floor, which required plaintiff to walk between two and five miles per day.
At the time of her injury on 7 June 2004, plaintiff was walking at work when the heel of her shoe pierced some carpet, causing her to fall forward and land on her left side on a cement floor covered by a thin layer of industrial carpet. Plaintiff fractured her left hip and required surgery. After surgery, plaintiff completed inpatient rehabilitation. When she was discharged, "x-rays revealed good position of the left hip fracture with good rotation." Plaintiff did not complain of back problems at that time, but continued to complain of pain and weakness in her left leg and knee, resulting in plaintiff making multiple visits to Dr. Lennon, the doctor who operated on her. These complaints were reported to plaintiff's nurse case manager, Ms. Diane Oakley. Dr. Lennon and the hip surgeon plaintiff sought for a second opinion, Dr. Attarian, agreed that plaintiff's hip injury "was at maximum medical improvement and assigned a 12 percent permanent partial disability rating to her left lower extremity." Despite continued pain and a limp, plaintiff returned to work, first on a part time basis with use of a scooter, and later on a full-time basis.
On 3 April 2006, after experiencing right side back pain the previous month from another work related incident, plaintiff returned to Dr. Attarian, who ordered an MRI of plaintiff's lumbar spine. The results "revealed multi-level degenerative disc disease and facet degenerative joint disease . . . [and] a focal left foraminal/lateral disc protrusion displacing the exiting, extra-foraminal left nerve root at the L4 level of the spine." Plaintiff then sought treatment from a neurosurgeon, Dr. Robert Wayne Nudelman. She told Dr. Nudelman that her back pain was caused by her 7 June 2004 injury. Dr. Nudelman proceeded with rounds of epidural steroid injections to relieve plaintiff's pain. Additionally, Dr. Nudelman reviewed plaintiff's medical records and asserted that it was
"more likely than not" that Plaintiff's June 7, 2004[,] work injury caused the foraminal and extra  foraminal disc herniation at the L4-5 level of the spine, which was, in turn, causing Plaintiff's symptoms of lower left back, left buttock, and left lower extremity pain, as well as loss of sensation in the lateral aspect of the left leg.
After multiple visits by plaintiff, on February 18, 2008, Dr. Nudelman determined that plaintiff would require surgery and should remain out of work. At this point, plaintiff had already voluntarily resigned from defendant-employer, asserting that the nature of her job duties had changed and required her to walk the floor much more, causing a significant increase in her pain. Plaintiff searched for, and briefly obtained, employment, but was unable to find suitable long-term employment.
Finding that Dr. Nudelman's expert medical opinions were "credible, competent, and consistent," the Full Commission concluded that plaintiff was unable to work as of 18 January 2007 when she resigned from her employment with defendant-employer. Additionally, the Full Commission found that plaintiff still made diligent and reasonable efforts to procure suitable employment, and that no such employment was found. In its opinion and award, the Full Commission found that "Plaintiff's June 7, 2004[,] work injury caused the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine found on Plaintiff's April 2006 MRI, and that this disc herniation occurred at the time of the June 7, 2004[,] work injury." The Full Commission ordered defendants to pay reasonable attorney's fees and to
pay temporary total disability compensation to Plaintiff at the rate of $688.00 per week from January 18, 2007[,] through the present and continuing until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in lump sum. Defendants are granted a credit for Plaintiff's earnings at the April 2007 High Point Furniture Market.
Defendants were also ordered to pay all of plaintiff's medical expenses arising from her injuries on 7 June 2004.

Arguments
"This Court's review is limited to a consideration of whether there was any competent evidence to support the Full Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law." Johnson v. Charles Keck Logging, 121 N.C. App. 598, 600, 468 S.E.2d 420, 422 (1996) (citing McLean v. Roadway Express, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982)) (emphasis removed). This Court has stated that "so long as there is some evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary." Shah v. Howard Johnson, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quotations and citation omitted). "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quotations and citation omitted).
Defendants first argue that there was not sufficient expert testimony that plaintiff's disc herniation was causally related to her 7 June 2004 work injury. Defendants argue that "because the only expert testimony supporting causation came from Dr. Nudelman, whose opinions have been inconsistent, are based on speculation, and are unsupported by the evidence[,]" that there was not competent evidence of causation. We disagree.
In a worker's compensation case, a plaintiff must prove that an employment-related accident caused the plaintiff's injury, although the accident "need not be the sole causative force to render an injury compensable[.]" Holley v. ACTS, Inc., 357 N.C 228, 231, 581 S.E.2d 750, 752 (2003) (quotations and citations omitted).
In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.
Id. at 232, 581 S.E.2d at 753 (quotations and citations omitted; alteration in original).
The Full Commission found as fact that Dr. Nudelman made the following statements regarding causation: (1) In correspondence to plaintiff's counsel, he wrote "it is certainly quite possible that [plaintiff] did suffer her L4-5 foraminal/extraforaminal disc herniation at the time of her work injury." (2) During his deposition, he "opined to a reasonable degree of medical certainty that the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine found on Plaintiff's April 2006 MRI more likely than not occurred at the time of Plaintiff's June 7, 2004[,] work injury." (3) During cross-examination, when asked whether he could state to a reasonable degree of medical probability or certainty that plaintiff's 7 June 2004 work injury caused the disc herniation, he replied that he "wouldn't say there's certainty of it. There is certainly probability." The Full Commission also found as fact that "Dr. Nudelman's expert medical opinions are credible, competent, and consistent, and gives greater weight to his opinions than to any contrary opinions or evidence from other medical providers in this case."
Defendants argue that Dr. Nudelman's expert medical opinions should be disregarded because they are inconsistent and they are founded on Dr. Nudelman's improper inference of causation from temporal sequence. We disagree with defendants' characterization of Dr. Nudelman's statements. A factfinder can infer causation "where a medical expert offers a qualified opinion as to causation, along with an accepted medical explanation as to how such a condition occurs, and where there is additional evidence tending to establish a causal nexus." Adams v. Metals USA, 168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (2005) (citation omitted). Dr. Nudelman is a licensed medical doctor and board-certified neurosurgeon. Dr. Nudelman, as an expert, based his opinion on his physical examination of plaintiff, plaintiff's diminished reflexes and sensation, plaintiff's consistent complaints, the failure of epidural steroid injections to ease her pain, and plaintiff's April 2006 MRI. Dr. Nudelman's opinions on medical causation were based on more than mere "speculation" or possibility, and his deposition, testimony, and correspondence asserting that the 7 June 2004 work injury was "more likely than not" the cause of the disc herniation are sufficient to attribute plaintiff's malady to the injury as opposed to age or other possible causes. Additionally, Dr. Nudelman's change in "verbiage" did not alter the substance of his consistent opinions. Dr. Nudelman may have altered his words with respect to causation, but his assertions were consistent with his determination that plaintiff's back injury was "more likely than not" caused by her 7 June 2004 work accident.
As for defendants' contention that the only support for causation was the fallacy of "post hoc, ergo propter hoc" (roughly: after X, therefore because of X), the Full Commission recited other evidence besides the bare sequence of events. From the time that plaintiff fell at work on 7 June 2004 until Dr. Nudelman declared her incapable of work on 18 February 2008, plaintiff opined periodically, if not continuously, that she had pain on her left side. Ms. Diane Oakley, plaintiff's nurse case manager, noted that plaintiff "expressed concern regarding a continued loss of strength and increased pain in her left leg and pain in her left knee[,]" all directly attributable to plaintiff's work injury and not resolved by her internal fixation surgery on her left hip. Plaintiff sought medical help from multiple doctors, resulting in the April 2006 MRI that revealed her disc herniation and led her to seek the care of Dr. Nudelman. This ultimately led to Dr. Nudelman's conclusion that plaintiff's 7 June 2004 fall had "more likely than not" caused her disc herniation.
Defendants next argue that plaintiff did not present competent evidence that her back injury caused her disability.
[T]o support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citations omitted). Defendants only argue the third prong of the Hilliard test, asserting that plaintiff was incapable of earning the same wages she had earned before her injury because she voluntarily resigned from her employment, not because of her injury. As the Full Commission noted, plaintiff "voluntarily terminated her employment" with defendant-employer on 18 January 2007 "because the nature of her job duties changed, requiring her to walk the sales floor a great deal more, causing a significant increase in her pain." After a brief stint working at the High Point Furniture Market in April 2007, plaintiff was not able "to secure employment that would not require her to be on her feet as much." In addition to noting plaintiff's failure to secure comparable employment, the Full Commission relied upon evidence that plaintiff was unable to work as a result of her injury. For example, Dr. Nudelman testified that plaintiff was unable to work as of January 18, 2007. Dr. Nudelman did not formally write plaintiff out of work until 18 February 2008, "indicat[ing] that after years of compression, the damage to the nerve root at the L4 level of the spine might be irreversible and permanent" and that plaintiff "required some type of surgical intervention in order to address these symptoms, and that she should remain out of work until further notice." Although this formal write-off came after the 18 January 2007 date that the Full Commission used to award benefits, Dr. Nudelman testified that plaintiff should not have been working as of 18 January 2007. Defendants offer an alternative narrative: "[T]he reason Plaintiff went out of work for Rose in January 2007 was because Plaintiff resigned when it became apparent Rose was going out of business, which is completely unrelated to Plaintiff's left leg injury of 7 June 2004." Given our narrow standard of review, we cannot weigh one narrative against the other; there is competent evidence to support the Full Commission's version of events and, thus, it stands.
In their final argument, defendants argue that the Full Commission improperly concluded that "Dr. Nudelman's medical causation opinions, which the Full Commission herein found to be credible, competent, and consistent, and accorded great weight, never changed in substance, though he may have used different verbiage at different times in order to express those opinions." We hold that this conclusion of law properly follows from the findings of fact addressing causation that we earlier held to be supported by competent evidence.
Defendants also argue that the Full Commission reached this erroneous conclusion by improperly applying this Court's holdings in Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997), and Perez v. American Airlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005). We disagree. In Parsons, we clarified that a plaintiff only has the burden of proving causation between the accident and the injury at her initial hearing; "[t]o require plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees." Parsons, 126 N.C. App. at 542, 485 S.E.2d at 869. After a plaintiff proves causation during the initial hearing, "[l]ogically, defendants [then] have the responsibility to prove the original finding of compensable injury is unrelated to her present discomfort." Id. Here, defendants argue that "there is no presumption of medical treatment being related when that medical treatment involves a completely different body part or medical condition than the one that was accepted as compensable." This Court addressed that issue in Perez. In Perez, we held that a Form 60 gives rise to the Parsons rebuttable presumption that additional medical treatment is related to the prior injury. Perez, 174 N.C. App. at 136, 620 S.E.2d at 293. In Perez, as here, the defendant argued that the plaintiff's injury "was a different injury from the injury stated on the Form 60 and, therefore, the admission of compensability does not cover this later and distinct injury." Id. at 136 n.1, 620 S.E.2d at 293 n.1. However, we explained:
The presumption of compensability applies to future symptoms allegedly related to the original compensable injury. We can conceive of a situation where an employee seeks medical compensation for symptoms completely unrelated to the compensable injury. But the burden of rebutting the presumption of compensability in this situation, although slight, would still be upon the employer.

Id. (emphasis added). Although the Full Commission concluded that the Parsons rebuttable presumption applied to plaintiff in this case because defendants "accepted the compensability of Plaintiff's June 7, 2004[,] work injury through the filing of a Form 60," the Full Commission did not rely on that presumption. Instead, it concluded as a matter of law that, "[d]espite the Parsons presumption in her favor, Plaintiff presented sufficient evidence to prove that her left lower back condition is causally related to her June 7, 2004[,] work injury." In other words, the Full Commission concluded that plaintiff had proven causality even though she was not required to; the Parsons presumption was not an essential part of its analysis because plaintiff had presented sufficient competent evidence to support causality even without the presumption.
For the foregoing reasons, we affirm the opinion and award of the Full Commission.
Affirmed.
Chief Judge MARTIN and Judge GEER concur.
Report per Rule 30(e).