***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The parties are properly designated, and there is no question as to the joinder or the non-joinder of any party.
4. On May 17, 2006, Plaintiff sustained a compensable work injury to his left shoulder.
5. Plaintiff's average weekly wage was $489.32 at all times relevant to these proceedings, yielding a compensation rate of $326.23.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Plaintiff's medical records;
 c. Stipulated Exhibit Three: North Carolina Industrial Commission forms and filings.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's right shoulder condition is a direct and natural consequence of his admittedly compensable May 17, 2006 work injury to his left shoulder?
2. Whether Plaintiff's left wrist condition is causally related to his admittedly compensable May 17, 2006 work injury? *Page 3 
3. Whether Plaintiff is entitled to any further workers' compensation benefits?
4. Whether Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 39 years old, with a date of birth of July 5, 1971. Plaintiff has a high school diploma. In addition, Plaintiff completed some correspondence courses in sales and trade.
2. As of 2006, Defendant-Employer employed Plaintiff as a lineman. Plaintiff's employment duties varied according to the need, but he primarily assisted with groundwork, including installing power. Eventually, Plaintiff began working with a crew that ran power to residential homes.
3. On May 17, 2006, while near the top of a light pole, Plaintiff began to fall but was able to catch himself with his left arm and hand after falling one and one-half to two feet. Plaintiff immediately felt pain in his left shoulder that he described as feeling like a pulled muscle. Later in the evening, Plaintiff began to experience a burning sensation and pain that radiated into the left side of his chest.
4. On May 18, 2006, Plaintiff presented to Hugh Chatham Memorial Hospital in Elkin, North Carolina, where he received pain medication. A subsequent visit to Hugh Chatham Memorial Hospital for magnetic resonance imaging (MRI) of Plaintiff's left shoulder revealed a low-grade mild partial articular surface tear. Plaintiff never had any prior injury or complaints related to his shoulders. Plaintiff followed up with his primary care physician, who treated him with steroid injections and took him out of work for two weeks. *Page 4 
5. Plaintiff returned to work in a light-duty capacity, but he continued to experience pain in his left shoulder and numbness in his hands. After approximately three weeks of working in a light-duty capacity, Plaintiff stopped working due to the pain and numbness in his left upper extremity.
6. Defendants accepted the compensability of Plaintiff's May 17, 2006 work injury via a Form 60 dated July 13, 2006, which described the injury as a "rotator tear to left shoulder."
7. On July 19, 2006, Plaintiff presented to Dr. William Eric Refvem, an orthopaedist, who diagnosed him with left shoulder impingement syndrome and a partial rotator cuff tear. Dr. Refvem released Plaintiff to return to work with no use of his left hand. Plaintiff testified that when he returned to work his hand stayed numb all the time and that he was having difficulties with his left wrist.
8. Plaintiff continued to seek treatment from Dr. Refvem during July and August 2006. Plaintiff's complaints of left shoulder pain increased to the point that he could not pick up anything with his left upper extremity of any significant weight, and he even experienced left shoulder pain at rest. Plaintiff reported to Dr. Refvem that his left hand was numb and he was finding it difficult to hold onto objects with it. On August 22, 2006, Dr. Refvem noted that Plaintiff's condition was turning out to be more than an instability issue, and recommended that he obtain a second opinion from a shoulder specialist.
9. On September 15, 2006, Plaintiff presented to Dr. William Stephen Furr, an orthopaedist specializing in shoulder surgery. Dr. Furr diagnosed Plaintiff with a subluxed and dislocated left shoulder with a high-grade, full thickness rotator cuff tear, and continued the restrictions of no use of his left arm. In September 2006, Dr. Furr performed an open *Page 5 
acromioplasty with a rotator cuff repair and minor arthroscopic debridement of Plaintiff's left shoulder. Following Plaintiff's surgery, Dr. Furr instructed him to wear a sling on his left arm.
10. On January 10, 2007, Dr. Furr noted that Plaintiff had recurrent numbness in his left hand. Dr. Furr was of the opinion that Plaintiff's symptoms were "probably left carpal tunnel syndrome, post traumatic with possibility of ulnar neuropathy as well." Dr. Furr ordered nerve conduction studies, which revealed "prolonged distal latency, normal amplitude and decreased conduction velocity across the left wrist," which he found to be consistent with "evidence of a mild left carpal tunnel syndrome."
11. In February 2007, Dr. Furr noted that Plaintiff continued to experience some "dead arm syndrome . . . consistent with an inferior subluxation of the shoulder." On April 27, 2007, Dr. Furr performed a second surgery on Plaintiff's left shoulder and instructed him to keep his left arm in a sling until his next office visit. Between May 2007 and November 2007, Plaintiff continued to have pain associated with his left shoulder. In October 2007, Plaintiff reported that it hurt him to carry a small soda bottle.
12. On January 30, 2008, Dr. Furr performed a third surgery on Plaintiff's left shoulder and again instructed him to use a sling. On April 24, 2008, Dr. Furr noted that Plaintiff was complaining of "more increasing pain in the right shoulder. He states that ever since he has had to rely on this for the last year and a half or two years . . . he has started to have pain. This past episode of surgery and being in the sling for so long without use of the left arm made his pain even worse."
13. According to Plaintiff, he started to use his right arm more after his May 17, 2006 work injury, and had to learn to do everything with his right arm except for writing. Plaintiff is left-hand dominant. Plaintiff first noted a dull, burning pain in his right arm that progressively *Page 6 
became worse. Plaintiff estimated that his left arm was in a sling "about 10 times" on separate occasions, with the longest length of time being about six weeks. When Plaintiff's left arm was in a sling, he had to rely upon his right arm. Dr. Furr acknowledged that Plaintiff's testimony at the hearing before the Deputy Commissioner regarding his right arm complaints after being required to wear a sling on his left arm was consistent with his records and his recollection of Plaintiff's condition. The Full Commission finds Plaintiff's testimony to be credible.
14. Dr. Furr initially diagnosed Plaintiff with right shoulder synovitis. An MRI of Plaintiff's right shoulder revealed a "[l]ong segment of linear tearing of the intra-articular portion of the biceps tendon . . ." and "fraying of the free edge of the posterior superior aspects of the glenoid labrum most consistent with tearing." Based upon the MRI findings, Dr. Furr diagnosed Plaintiff with "right shoulder biceps tendon tearing and labral tears."
15. On October 21, 2008, Dr. Furr noted that Plaintiff "is pretty much as good as he is going to get with the left shoulder." Dr. Furr assigned Plaintiff a 25 percent permanent partial disability rating to his left shoulder. In addition, Dr. Furr felt that Plaintiff would require either pain management or a primary care provider to continue providing the medication related to the left shoulder injury.
16. On November 24, 2008, Plaintiff presented to Dr. Michael Lee Dockery, an orthopaedist, for an independent medical examination. Dr. Dockery diagnosed Plaintiff with "right shoulder possible partial-thickness biceps tendon tear, possible posterior superior labral tear." Dr. Dockery further noted that ". . . it is my expert medical opinion that his [Plaintiff's] current right shoulder complaints cannot be shown as a direct cause [sic] relationship to the industrial accident of 2006," and he re-iterated this opinion at his deposition. *Page 7 
17. At his deposition, Dr. Furr opined, and the Full Commission finds as fact that Plaintiff's May 17, 2006 work injury caused the subluxation problem, the impingement problem, and the left rotator cuff tear that he treated.
18. Dr. Furr was also of the opinion, and the Full Commission finds as fact that Plaintiff's May 17, 2006 work injury was a "component" of the paresthesias that Plaintiff was experiencing in his left hand, and that Plaintiff's work injury caused the development of his left carpal tunnel syndrome. As a result of Plaintiff's left carpal tunnel syndrome, Dr. Furr opined, and the Full Commission finds as fact that Plaintiff will require further diagnostic testing and treatment, including the possibility of carpal tunnel release surgery in the future, if conservative treatment fails.
19. Dr. Furr disagreed with Dr. Dockery's opinions as to the cause of Plaintiff's right shoulder complaints. In particular, Dr. Furr disagreed that Plaintiff's right shoulder complaints occurred as a result of "normal use." Rather, Dr. Furr opined that due to the weakening of Plaintiff's left shoulder, he "probably required recruitment of the other shoulder to help take over the activities of daily living, plus any activity . . . more than that." Driving, cleaning, and other chores would put more demand on Plaintiff's right shoulder and consequently, this extra demand placed on the right shoulder was either a partial or direct cause, or "at worst, exacerbated whatever condition may have been in his [right] shoulder." Dr. Furr was of the opinion and the Full Commission finds as fact that regardless of whether Plaintiff had a labral tear, the overuse or over-demand placed upon the right shoulder as a result of the May 17, 2006 work injury was a contributing factor that aggravated, if not caused, the right biceps tearing or fraying cartilage. Plaintiff needs further medical treatment for his right shoulder complaints. *Page 8 
20. The Full Commission gives greater weight to the opinion testimony of Dr. Furr over any contrary opinions of Dr. Dockery. As Plaintiff's treating physician, Dr. Furr had the opportunity to follow Plaintiff's progress, complaints, and the limitations on his left arm that resulted in over use of his right arm over a long period of time.
21. The Full Commission finds, based upon the greater weight of the evidence, that on May 17, 2006, Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer to his left shoulder and hand, requiring three surgeries on the left shoulder and resulting in the development of carpal tunnel syndrome.
22. The Full Commission finds, based upon the greater weight of the evidence, that as a direct and natural consequence of Plaintiff's May 17, 2006 work injury to his left arm and hand, Plaintiff overused or placed more demand on his right shoulder, causing or aggravating his right shoulder biceps tearing or fraying cartilage.
23. Although Plaintiff is at maximum medical improvement with respect to his May 17, 2006 work injury to his left shoulder, he requires further medical treatment to provide relief or lessen his disability, including pain management or a primary care provider to continue providing the medication related to the left shoulder injury.
24. Plaintiff is not at maximum medical improvement with respect to his left carpal tunnel syndrome and his right shoulder condition, which are causally related to his compensable work injury.
25. The treatment Plaintiff received from Dr. Furr was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. The Full Commission further finds that the future treatment recommended by Dr. Furr for Plaintiff's left carpal tunnel syndrome and *Page 9 
right shoulder condition, including further diagnostic testing and treatment and the possibility of surgery, if conservative treatment fails, is reasonably necessary.
26. Defendants are currently paying Plaintiff temporary total disability compensation as a result of his May 17, 2006 work injury. There is no issue before the Full Commission concerning Plaintiff's entitlement to continuing temporary total disability compensation.
27. The Full Commission finds, based upon the greater weight of the evidence, that Defendants defended this claim with reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 17, 2006, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer to his left shoulder and hand, requiring three surgeries on the left shoulder and resulting in the development of post-traumatic carpal tunnel syndrome. N.C. Gen. Stat. § 97-2(6) (2009).
2. Based upon the opinions of Dr. William Stephen Furr and the other competent and credible evidence of record, the Full Commission concludes that Plaintiff proved that his May 17, 2006 work injury either caused or contributed to his left shoulder injury and left carpal tunnel syndrome, and that Plaintiff's right shoulder condition was a direct and natural consequence of Plaintiff's May 17, 2006 work injury. N.C. Gen. Stat. § 97-2(6) (2009); Adams v. Metals USA,168 N.C. App. 469, 608 S.E.2d 357 (2005); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983). *Page 10 
3. Although Plaintiff is at maximum medical improvement with respect to his May 17, 2006 work injury to his left shoulder, he requires further treatment, including referral to a pain management specialist or a primary care provider for his left shoulder injury. Such future medical treatment is reasonably necessary in order to continue to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1 (2009).
4. Plaintiff is not at maximum medical improvement with respect to his left carpal tunnel syndrome and right shoulder condition. The treatment Plaintiff received from Dr. Furr with respect to his left carpal tunnel syndrome and right shoulder condition was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability. The future treatment recommended by Dr. Furr, including further diagnostic testing and the possibility of surgery, if conservative treatment fails, is reasonably necessary in order to continue to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability with respect to his left carpal tunnel syndrome and right shoulder condition. Defendants are obligated to provide such treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2009).
5. Defendants defended this claim with reasonable grounds. N.C. Gen. Stat. § 97-88.1 (2009).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall continue to pay temporary total disability compensation to Plaintiff at the rate of $326.23 per week. *Page 11 
2. Defendants shall pay all medical expenses incurred as a result of Plaintiff's May 17, 2006 work injury, including the treatment provided by Dr. William Stephen Furr and any future treatment recommended by him, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of any continuing compensation owed to Plaintiff.
4. Defendants shall pay the costs of these proceedings.
This the 20th day of August 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1