* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good grounds to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
 * * * * * * * * * * * EVIDENTIARY RULINGS
In its Brief to the Full Commission, Defendant objected to the portions of Plaintiff's Brief to the Full Commission that referenced information on various websites, as well as certain alleged facts not supported by the evidence of record. Said portions of Plaintiff's Brief were excluded from consideration by the Full Commission.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That Plaintiff sustained an electrical injury, the nature and extent of which is in dispute, on or about July 4, 2005, when cleaning out a promo case.
5. That an employment relationship existed between Plaintiff and Defendant during some or all of the time period of the previous paragraph.
6. Plaintiff's average weekly wage was $720.35.
7. The parties stipulated into evidence as Stipulated Exhibit #1, Pre-Trial Agreement, as modified and initialed by the parties.
8. The parties stipulated into evidence as Stipulated Exhibit #2, medical records, Plaintiff's Personnel File, Plaintiff's Recorded Statement, Plaintiff's Discovery Responses, and Defendant's Discovery Responses.
9. The parties stipulated into evidence as Stipulated Exhibit # 3, Surveillance report,
10. The parties stipulated into evidence as Stipulated Exhibit # 3A, Surveillance CD.
 * * * * * * * * * * * *Page 3 
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 42 years old. Plaintiff graduated from high school and attended a few community college courses. His work experience includes 22 years in the grocery business. He began working for Defendant in 1993.
2. On July 4, 2005, Plaintiff was employed by Defendant as a market sales manager in its Chadbourn, North Carolina grocery store. While cleaning out a meat promo case which was stopped up with water, Plaintiff sustained an electrical injury. Plaintiff did not lose consciousness or fall down. There were no electrical current entry or exit wounds on any part of his body and no evidence of burns anywhere on his body. The meat promo case at issue is approximately 5 feet long and about 3 feet wide, stands waist high, and carries 120 volts of electricity.
3. The electrical injury occurred at the beginning of Plaintiff's work shift on July 4, 2005, between 8:30 and 9:00 a.m. Plaintiff reported the incident immediately but declined medical care and worked the remainder of his shift.
4. Defendant filed a Form 63 and investigated the incident. The claim was thereafter accepted as compensable by operation of N.C. Gen. Stat. § 97-18(d). The parties entered into a written agreement at the June 6, 2006 mediated settlement conference that Defendant had "accepted Plaintiff's claim for an electrical injury on 7/4/05." Plaintiff has been receiving weekly temporary total disability benefits from the accident date and ongoing.
5. After his shift ended on July 4, 2005, Plaintiff presented to the Emergency Department at Loris Community Hospital, where he reported heart palpitations and left sided-weakness. The attending physician noted that Plaintiff did not lose consciousness after the *Page 4 
injury, did not have arrhythmia, and did not have any skin or external muscle injury. Plaintiff was discharged on July 5, 2005, in stable condition to resume normal activities as tolerated.
6. Thereafter, Plaintiff received treatment from his family physician, Dr. Stephen Grubb, and Tom Coe, P.A., beginning on July 7, 2005, at Tabor City Family Medicine. Plaintiff initially reported a "tingly heavy feeling in his chest" but no tremors.
7. On July 11, 2005, Plaintiff presented to Dr. Amit Pande at Pee Dee Cardiology. Dr. Pande noted that Plaintiff had a pre-existing history of diabetes insipidus. An EKG was essentially normal. Dr. Pande ordered a stress test, stating that Plaintiff could return to work if the test was negative for ischemia. The test took place on July 14, 2005, and was negative for ischemia.
8. On July 29, 2005, Plaintiff returned to Dr. Grubb and for the first time reported a head tremor and right arm tremor. Dr. Grubb recommended a neurological evaluation. An August 2, 2005 brain MRI ordered by Dr. Grubb was read as normal. An August 10, 2005 CT Scan of the head was also negative.
9. On September 12, 2005, Plaintiff presented for a neurological consultation with Dr. William Koller at UNC Hospitals. Dr. Koller's impression was mild head tremor post electrical shock. He recommended that Plaintiff continue taking Inderal.
10. On September 21, 2005, Plaintiff reported to Dr. Grubb that all his symptoms had gone away since the electrocution except the head tremor. During October and November 2005, Plaintiff continued to treat with Dr. Grubb for the head tremor and some chest pain.
11. On November 30, 2005, Plaintiff presented to Dr. Indravadan Gatiwala, a neurologist at The Neurology Center of Lumberton. Plaintiff primarily complained of tremors of the hands and head. Plaintiff reported secondary complaints of numbness in the arm, face, lips, *Page 5 
and lower extremities. Dr. Gatiwala's impression was tremors and head titubation, more likely occurring from the electrical injury. Dr. Gatiwala noted that Plaintiff's upper and lower extremity numbness would be difficult to correlate with the electrical injury and Plaintiff needed further workup to rule out other causes. In regard to Plaintiff's work status, Dr. Gatiwala recommended an FCE.
12. On December 13, 2005, Plaintiff underwent an FCE with Carolina Kinematic Consultants. The FCE examiner found "significant sub-maximum effort . . . compatible with a strong symptom magnification." Despite this sub-maximal effort, Plaintiff demonstrated the capability to perform light duty work.
13. On referral from Dr. Grubb, on February 2, 2006, Plaintiff presented to another neurologist, Dr. Michael McCaffrey at Strand Regional Specialty Associates. Dr. McCaffrey noted on February 20, 2006, that Plaintiff's tremor may be secondary to some form of Parkinson's disease. In a later March 16, 2006 medical note, Dr. McCaffrey noted that the tremor could be secondary to some form of Parkinson's disease brought on by the electrical injury.
14. On June 13, 2006, Plaintiff presented for a third neurological opinion to Dr. Cynthia Lopez at the Eastern Neurology Center 
NeuroMuscular Center. Dr. Lopez noted that Plaintiff possibly suffered cardiac and cervical cord damage in the electrical injury, but further noted that she had no objective evidence to confirm those possibilities.
15. During the balance of 2006 and throughout 2007, Plaintiff continued to treat with Dr. Gatiwala for his tremors. On April 27, 2006, Dr. Gatiwala recommended that Plaintiff be evaluated by a specialist at an academic center and his care transferred to another neurologist since his tremors were not improving with the current medication regimen. Dr. Gatiwala *Page 6 
declined to state Plaintiff's disability in relation to his work injury. He noted that Plaintiff had other ongoing medical problems, including DVT, sleep apnea, and elevated blood sugars. On September 5, 2006, Dr. Gatiwala stated that Plaintiff's tremor and head titubation could be secondary to the electrical injury and reiterated that Plaintiff's care needed to be transferred to a movement disorder specialist.
16. On December 17, 2007, Plaintiff presented for an IME to Dr. Sanjay Iyer, a movement disorders specialist and the Director of the Carolina Center for Parkinson's Disease and Movement Disorders in Charlotte. Dr. Iyer examined Plaintiff, reviewed his medical records, and assessed either a psychogenic tremor or early signs of Parkinson's disease.
17. Dr. Iyer's deposition testimony is accepted as that of an expert medical witness in neurology with a specialty in movement disorders. Dr. Iyer opined that Plaintiff's tremors were not caused by the electrical injury and that Plaintiff retained no disability from the electrical injury.
18. Dr. Iyer found 3 distinct tremors present in Plaintiff: (1) a right arm flexion-extension tremor (up/down), (2) a right arm pronation-supination tremor (rotary motion), and (3) a yes-yes head tremor. Regarding the right arm flexion-extension tremor, Dr. Iyer opined that it was not related to any neurological injury or illness and specifically was not related to an electrocution injury. Dr. Iyer found this tremor distractible, meaning that it disappeared or changed when Dr. Iyer had Plaintiff perform complex movements with his other hand. Dr. Iyer testified that he believed Plaintiff was faking this tremor, as well as his shuffled gait, based on inconsistent observations of Plaintiff in his office. Regarding the right arm pronation-supination tremor, Dr. Iyer testified that it also was not related to the electrocution injury and that he suspected it was an early sign of Parkinson's disease. Dr. Iyer testified that there is no literature *Page 7 
or evidence to support the theory that Parkinson's disease could be triggered by an electrocution or nerve injury. Dr. Iyer also testified that Plaintiff did not sustain any lasting nerve injury in the electrocution which would be causing this tremor. As to the yes-yes head tremor, Dr. Iyer testified that it was less than probable that a cervical cord injury was present to cause the tremor and it was more likely than not idiopathic or hereditary.
19. Dr. Iyer also opined that Plaintiff's electrocution injury did not cause or aggravate his diabetes mellitus, cardiac condition, or cervical degenerative disc disease. Dr. Iyer further testified that he did not find any evidence that Plaintiff retains any injury or any disability from the electrocution, to a reasonable degree of medical certainty.
20. Dr. Iyer is the most qualified expert deposed to address causation of Plaintiff's tremors. Dr. Iyer is the only expert witness specializing in movement disorders and tremors. Dr. Iyer is the only expert to offer a detailed, medically reasoned analysis of Plaintiff's 3 separate tremor types and address causation of each tremor through differential diagnoses. Dr. Iyer was the only doctor who determined that Plaintiff actually demonstrated 2 different tremors in his right arm.
21. Dr. Iyer's expert medical opinions, including those about causation of Plaintiff's tremors and lack of ongoing disability, are all accepted as competent and credible and are afforded the greatest weight in this record.
22. As Plaintiff's treating neurologist, Dr. Gatiwala's testimony is also accorded significant weight. Although Dr. Gatiwala's medical notes reflected an initial impression of tremors secondary to the electrical injury, he opined in his second, post-hearing deposition that Plaintiff's tremor symptoms were not related to the electrical injury at work. Dr. Gatiwala based this opinion on (1) the lack of medical literature found during his research supporting a causal *Page 8 
link between tremors and electrocution and (2) the fact that Plaintiff did not show improvement over time on medications as would be expected if the tremors were from an electrical injury. Dr. Gatiwala also questioned Plaintiff's motives, testifying, "He's trying to gain something out of this injury."
23. Dr. Gatiwala testified that if Plaintiff's tremor symptoms are controlled, "he is able to work." Dr. Gatiwala testified that Plaintiff has other medical problems which may limit him functionally, but with respect to the electrical injury, "[h]e would be able to work."
24. Dr. Grubb, a family practitioner, testified that Plaintiff's diabetes mellitus onset was most likely related to his body mass and weight gain, a pattern which pre-existed the work injury.
25. Dr. Grubb offered his opinion that Plaintiff's head tremor, right arm tremor, and chest pain were caused by the electrical injury at work. Dr. Grubb also testified that it was his opinion that Plaintiff cannot pursue gainful employment.
26. Notwithstanding that Plaintiff was actively treating for chest pain years before the work accident, Dr. Grubb's causation and disability opinions were expressly based on his reasoning that because Plaintiff did not exhibit tremors before the electrocution but did later in time, causation must exist. Dr. Grubb relied on no medical literature or studies in forming his opinions.
27. Dr. Grubb's opinions on the causation of Plaintiff's tremors and his alleged related disability are assigned minimal weight in comparison to the opinions of Dr. Iyer and Dr. Gatiwala, both neurologists, on these issues. *Page 9 
28. The stipulated medical records from Dr. McCaffrey, Dr. Lopez, and Dr. Koller do not contain any competent expert medical opinions on the cause of Plaintiff's current medical conditions or disability.
29. The far greater weight of the competent medical testimony and evidence of record establishes that Plaintiff's tremors are not causally related to the electrical injury at work.
30. The greater weight of the competent medical testimony and evidence of record establishes that Plaintiff's diabetes mellitus, leg DVT/blood clot condition, and cardiac condition/chest pains are not causally related to the electrical injury at work.
31. The greater weight of the competent medical testimony and evidence of record establishes that Plaintiff does not currently suffer from any medical condition or any disability related to the compensable electrical injury.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. It is well-settled that in a Workers' Compensation claim, the plaintiff has the burden of proving each element of his claim.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "[W]here an expert witness expressly bases his opinion as to causation of a complex medical condition solely on the maxim post hoc ergo propterhoc (after it, therefore because of it), the witness provides insufficient evidence of causation." Adams v. Metals USA,168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (2005). *Page 10 
2. In an accepted claim, however, the "Parsons presumption" applies and gives the employee a rebuttable legal presumption additional medical treatment is directly related to the compensable injury. Parsons v.Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v.American Airlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005),review improvidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006),reh'g denied, 360 N.C. 655, 638 S.E.2d 469 (2006). This presumption can be overcome, however, by evidence that the claimed treatment or condition is not directly related to the compensable injury.Id.
3. In this case, the overwhelming weight of the competent expert evidence affirmatively establishes that Plaintiff's tremors are not causally related to the July 4, 2005 electrical injury at work.
4. Defendant never accepted Plaintiff's diabetes, cardiac/chest pain, or leg condition as compensable. Therefore, the burden of proving their direct casual relation to the work injury rests squarely on Plaintiff.Holley, supra.
5. The clear weight of the competent evidence affirmatively establishes that Plaintiff's diabetes mellitus, leg condition, and cardiac/chest pain condition are not the direct causal results of the electrical injury.
6. The burden is on the employee to show that he is unable to earn the same wages he earned before the injury, in either the same or other employment. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). The acceptance of an employee's claim as compensable under a Form 60 or 63 does not create a presumption of ongoing disability.Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277
(2001). Therefore, in this case, the burden of proving disability remains with Plaintiff. Id. *Page 11 
7. Based on the greater weight of the competent evidence, Plaintiff has failed to meet his burden of proving any compensable ongoing disability. Russell v. Lowes, 108 N.C. App. 762, 425 S.E.2d 454 (1993); N.C. Gen. Stat. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for any medical treatment authorized to date, but further treatment for Plaintiff's tremors and other current medical conditions is DENIED as unrelated to the compensable electrical injury.
2. Plaintiff is under no ongoing compensable disability. Defendant may terminate payment of temporary total disability compensation as of the date of this Award.
3. Each side shall bear its own costs.
This the ___ day of May 2009.
 S/___________________
 PAMELA T. YOUNG
 CHAIR
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ STACI T. MEYER COMMISSIONER *Page 1