***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Employee-Plaintiff and Employer-Defendant.
3. The Phoenix Insurance Company was the carrier on the risk for Employer-Defendant.
4. On April 22, 2007, Employee-Plaintiff was employed as a certified nurses' aid (CNA) by Employer-Defendant.
5. Employee-Plaintiff has an average weekly wage of $333.00. This yields a weekly compensation benefit of $222.01.
6. On April 22, 2007, Employee-Plaintiff sustained a compensable injury to her lumbar spine while lifting a patient.
7. At the hearing, the parties submitted the following as Stipulated Exhibits:
 (a) Pre-Trial Agreement as Stipulated Exhibit no. 1.
 (b) Stipulated Exhibit no. 2 consisted of Employee-Plaintiff's medical records and the Industrial Commission Forms and Filings.
 (c) The parties' discovery responses were submitted as Stipulated Exhibit no. 3.
 (d) Plaintiff's employment file was submitted as Stipulated Exhibit no. 4.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was thirty-four years of age. Plaintiff did not complete high school and per her testimony, she has only an *Page 3 
eighth grade education. Plaintiff had been employed by Defendant-Employer as a certified nursing assistant I (CNA I) for approximately five years.
2. On or about April 22, 2007, Plaintiff sustained a compensable injury by accident to her back while assisting with the transfer of a patient from a bedside commode to the bed. Plaintiff felt pain in her back when she attempted to put her leg under the patient to keep the patient from falling.
3. Defendants accepted Plaintiff's claim for a low back injury via a Form 60 dated May 14, 2007, and provided medical treatment for the injury. Defendants initiated payment of benefits for temporary total disability (TTD) on May 1, 2007. Defendants initially paid TTD benefits at a rate of $311.93 per week. However, upon revision of the Form 22 to reflect the dates worked during the 52 weeks prior to Plaintiff's injury, the correct average weekly wage was revealed to be $333.00. Accordingly, Defendants issued the underpayment of benefits which resulted from the incorrect average weekly wage.
4. Plaintiff received her initial medical care with Dr. John P. Mahaney, Jr. at New Bern Family Practice Center. Dr. Mahaney took Plaintiff out of work for a time, treated her with medications, and referred her to physical therapy. Plaintiff underwent physical therapy at Peak Performance Sports and Physical Therapy in New Bern from May 03, 2007, through June 14, 2007, and was discharged after having attempted every activity requested of her and having met some of her short-term goals.
5. An MRI of Plaintiff's lumbar spine was obtained on June 25, 2007, and revealed multilevel spondylosis. There was a broad-based disk bulge at L3-4 with bilateral facet arthropathy resulting in mild bilateral neuroforaminal narrowing. At L4-5 there was a broad-based *Page 4 
disk bulge with bilateral facet arthropathy resulting in mild to moderate neuroforaminal narrowing.
6. Dr. Mahaney testified, and the undersigned find as fact, that the facet arthropathy revealed by the MRI was basically "wear and tear arthritis," and that there was only minimal evidence of a pinched nerve.
7. Dr. Mahaney referred Plaintiff to "Dr. Delaney's group," at Coastal Physical Medicine for further evaluation. As a result of Dr. Mahaney's referral, Plaintiff was evaluated by Dr. Alan Russakov of Coastal Physical Medicine on July 19, 2007.
8. During her evaluation with Dr. Russakov, Plaintiff complained of left-sided low back pain and denied radiation, numbness and weakness. Plaintiff reported that she "spends most of the day on the couch watching television."
9. Dr. Russakov noted that Plaintiff had some hyperlordosis of the lower back but that this would be expected in an individual of her size. Plaintiff weighs approximately 315 pounds. Further, he noted that she was capable of lateral bending to the extent that would be expected of an individual of her size.
10. Dr. Russakov reviewed x-rays, which he found unremarkable, and the MRI of Plaintiff's lumbar spine. While there were some degenerative changes noted, he found these were "hardly enough to explain what the patient has in the way of pain." Dr. Russakov did not recommend any stronger narcotic pain medicines since the one she was taking "puts her to sleep." Dr. Russakov had no further treatment to offer Plaintiff.
11. On July 26, 2007, Plaintiff returned to Dr. Mahaney of New Bern Family Practice Center, with complaints of continued back pain. Dr. Mahaney released Plaintiff to return to work to a job that allows sitting most of the time. He also referred her for additional physical therapy. *Page 5 
12. Plaintiff underwent further physical therapy at Peak Performance between August 1, 2007, and August 27, 2007. Although she improved her strength, at her last visit, it was noted that Plaintiff had not returned to a level of safe strength required for her occupation.
13. The therapist recommended work conditioning and a functional capacity evaluation. Plaintiff participated in a program at the Center for Industrial and Physical Therapy between September 17, 2007, and October 04, 2007. She was discharged with short-term goals met and long-term physical goals partially met.
14. Plaintiff returned to Dr. Mahaney on October 6, 2007. Dr. Mahaney testified, and the undersigned find as fact, that Plaintiff did complain of some radicular pain in the left leg on this date, but that most of her pain was located in the back.
15. Dr. Mahaney testified, and the undersigned find as fact, that he considered referring Plaintiff for a neurosurgical consultation but he did not believe this would be of benefit as most of Plaintiff's pain was located in the back rather than radiating onto the leg. Further, Plaintiff reported that she was uninterested in a neurosurgical consultation. Accordingly, Dr. Mahaney referred Plaintiff for a functional capacity evaluation.
16. Plaintiff underwent a functional capacity evaluation (FCE) at the Center for Industrial and Physical Therapy on October 8, 2007. Based upon the FCE, Plaintiff was deemed capable of working at the light to medium physical demand level.
17. After reviewing the results of the FCE, Dr. Mahaney wrote a letter to the Carrier on January 10, 2008. He noted that he had last seen Plaintiff on October 16, 2007, and that she had since undergone the FCE. Dr. Mahaney advised that Plaintiff had permanent physical restrictions of sedentary work with no bending, stooping, or climbing of stairs, no lifting over 25 pounds, and no standing for prolonged periods of time. *Page 6 
18. When Plaintiff next saw Dr. Mahaney on January 16, 2008, she continued to complain of back pain. Dr. Mahaney again noted that Plaintiff had "likely reached maximum medical improvement." Due to her ongoing pain complaints he recommended a pain management evaluation.
19. On February 11, 2008, Dr. Mahaney sent a letter to the carrier advising that Plaintiff was permanently disabled from her usual occupation of CNA, but that she would be capable of being employed in sedentary work with no heavy lifting.
20. On September 3, 2008, in response to the NCIC Workers' Compensation Medical Status Questionnaire, Dr. Mahaney assigned a twenty percent (20%) permanent partial disability rating to Plaintiff's spine. Dr. Mahaney testified, and the undersigned find as fact, that he could not remember the basis for this opinion. Dr. Mahaney thought that he might have looked in a book, but could not recall whether he used the AMA Guidelines or the North Carolina Industrial Commission Guidelines to assign Employee-Plaintiff's PPD rating.
21. Dr. Mahaney's assessments of Plaintiff's pain complaints and her permanent impairment are based to some degree upon the Plaintiff's subjective complaints of pain, which apparently Dr. Mahaney finds to be credible. The evidence fails to show an objective basis for referral to the pain clinic or for the high PPD rating assigned to Plaintiff's back.
22. On January 21, 2009, upon Order of Executive Secretary Weaver, Defendants authorized a one-time return evaluation of Plaintiff by Dr. Alan Russakov at Coastal Physical Medicine Rehabilitation Services. Per the testimony of Dr. Christopher Delaney, who is in the same practice, Dr. Russakov refused to see Plaintiff, and instead Dr. Delaney examined her.
23. Dr. Delaney testified, and the undersigned find as fact, that he is a physician, board certified in physical medicine and rehabilitation with a subspecialty in the fields of the care of *Page 7 
children and adults with physical and cognitive disabilities. He is also board certified in the sub-specialties of spinal cord injury medicine and pediatric rehabilitation medicine. There are only approximately 500 spinal cord injury specialists in the United States. Dr. Delaney is also a certified disability analyst, a certified wound specialist and a certified brain injury specialist.
24. Dr. Delaney is licensed to practice medicine in New Jersey, Pennsylvania, and North Carolina. He practices in the field of physical medicine and rehabilitation, which uses non-invasive techniques to treat disability and pain, and also helps patients develop compensatory strategies for temporary and permanent physical and cognitive disabilities. Dr. Delaney is a competent medical expert in the fields of physical medicine and rehabilitation.
25. Dr. Delaney examined Plaintiff on February 10, 2009, using "a variety of well recognized and scientifically validated techniques to look for non-organic indicators of pain," and that Plaintiff "was positive for virtually all of those." Dr. Delaney found signs of secondary gain issues leading to Plaintiff's symptom exaggeration.
26. Per Dr. Delaney, his physical examination of Plaintiff was essentially unremarkable for objective findings. Her neurologic exam was normal. He noted the MRI of Plaintiff's lumbar spine revealed non-traumatic degeneration of the spine, which was "probably related to a combination of aging and her morbid obesity."
27. Dr. Delaney's assessment was that Plaintiff sustained a back strain or back sprain on April 22, 2007, which is a self-limited minor musculoskeletal injury. He concluded that while Plaintiff may have low back pain, there is no evidence that the pain is traumatically related. Dr. Delaney testified, and the undersigned find as fact, that Plaintiff "had virtually the same complaints, by her report, for years, in spite of living a very sedentary lifestyle," and it is unlikely that her pain is related to an acute injury such as a sprain/strain syndrome. *Page 8 
28. Dr. Delaney disagreed with Dr. Mahaney's assignment of a 20% PPD rating to Plaintiff's spine. In cases of chronic back pain absent other significant pathology, the appropriate PPD rating would be 5% to the spine. However, considering the level of Plaintiff's symptom magnification, the lack of objective findings, and the uncertainty that she has genuine pain, Dr. Delaney would assess her with no rating (0% PPD) to her spine.
29. Other than weight loss, Dr. Delaney has no further treatment recommendations for Plaintiff. He could not recommend a pain management program.
30. In weighing the medical evidence, the undersigned find that Dr. Delaney is an expert in physical medicine and that, as such, he has special training that allows him to identify inorganic pain behaviors. Dr. Mahaney testified that he would defer to the assessment of Dr. Delaney in this regard. Dr. Delaney is more qualified make assessments of pain and disability than Dr. Mahaney who practices solely in the field of family medicine. Therefore the testimony of Dr. Delaney is given greater weight than that of Dr. Mahaney, and in particular regard to the assessment of Plaintiff's pain and any permanent impairment.
31. Sometime in March 2008, per Plaintiff, she was at home when her left leg gave way and she injured her right knee. Plaintiff presented to Craven Regional Medical Center on March 15, 2008, at which time she reported that her left leg was weak and, while walking, she felt her right knee pop. No medical evidence or testimony was presented regarding whether the alleged injury to Plaintiff's right knee was the natural result of Plaintiff's April 22, 2007, work injury, and the undersigned find the evidence is insufficient to establish a causal connection.
32. On March 7, 2008, Plaintiff returned to light duty employment with the Employer. Due to the permanent restrictions assigned by Dr. Mahaney, and as determined by Dr. Mahaney, Plaintiff could not return to her prior duties as a CNA. *Page 9 
33. The Employer placed Plaintiff in a position as a laundry/dietary aide with duties within her permanent restrictions. Plaintiff continued in this position until terminated by the Employer on or about November 26, 2008. At some point, Plaintiff's wages were reduced from her pre-injury wages. There is no evidence that the Employer paid Plaintiff benefits for any temporary partial disability during her light duty employment.
34. Per Samantha Cook, Director of Nursing, the Employer eventually became aware that Plaintiff had been placed at maximum medical improvement and that her physical restrictions were permanent, such that she could not perform CNA work. In August or September 2008, Ms. Smith, Risk Manager, called Plaintiff and advised her that she should look for another position with the employer consistent with her permanent restrictions.
35. Ms. Cook and Dee Smith then mailed Plaintiff a letter on September 3, 2008, which stated that Plaintiff would be allowed to continue her transitional duty for another 90 days, during which time she was required to contact Human Resources (HR) who would assist her in locating permanent suitable employment with the Employer. Plaintiff's testimony that she never received the letter from the Employer is deemed not credible, especially where the evidence shows the letter was mailed to her correct address.
36. On November 17, 2008, Plaintiff noticed that she was no longer appearing on the work schedule. She telephoned Dee Smith, who reminded her of the earlier conversation they had in August or September, when Plaintiff was instructed to contact HR who would assist her in locating suitable employment with the Employer. Ms. Smith's testimony about these two conversations is found to be credible. *Page 10 
37. Ms. Cook and Ms. Smith testified, and the undersigned find as fact, that after Plaintiff did not follow instructions to contact Human Resources to discuss permanent suitable employment, Plaintiff's employment was terminated.
38. Plaintiff testified that she thought that if a job had been available, Ms. Cook or the administrator would have contacted Plaintiff about it to offer it to her. However, this testimony is not credible or reasonable.
39. Due to the large size of the Employer and the number of potential positions, the managers or supervisors at particular locations may not know whether a job is available or whether it would be appropriate for a certain employee. The Employer is too large to seek out every potential employee who may qualify for an open position, and it is the responsibility of the individual employee to contact Human Resources to determine whether there are suitable open positions. Only the regional human resources manager would have that knowledge.
40. The Employer has an internal website listing the open positions within the company and employees are encouraged to look on this website and apply for positions in which they are interested. Plaintiff did not take advantage of this website to look for available positions with her Employer. Plaintiff attempted to look for employment at two other locations of Employer, but never looked for work at her current place of employment.
41. During the time between September 3, 2008, and Plaintiff's termination, the position of Admissions Coordinator came open at Plaintiff's employment branch. That job was consistent with Plaintiff's permanent physical restrictions. Plaintiff did not apply for this position. The Employer never advised Plaintiff that the position was available and never offered Plaintiff the position. Therefore, Plaintiff had no opportunity to refuse the position. Although other suitable *Page 11 
positions may have become available, there is no evidence that the Employer offered any such positions to Plaintiff.
42. Although the Plaintiff's testimony about not receiving the letter advising her to seek other jobs with the Employer is not credible, the evidence fails to support the Employer's position that Plaintiff was terminated for cause unrelated to her workers' compensation claim. Plaintiff's termination occurred under circumstances where she was working on restricted duty due to her injury. Plaintiff was terminated because she had not been able to return to her job as a CNA. The Employer considered her light duty assignment as temporary and the Employer thereafter failed to provide her any other employment within her restrictions.
43. The documentation submitted by Plaintiff shows that she made 18 employer contacts over a period of approximately six weeks, or about three contacts per week. She made only three of these in person. Plaintiff did not look for employment in the newspaper or at the Employment Security Commission.
44. Defendants retained the services of Robert Manning, a rehabilitation counselor certified by the State of North Carolina and the NC Department of Labor. He has a Master's degree in rehabilitation counseling, and is recognized as an expert in the field of Vocational Rehabilitation.
45. Mr. Manning performed a labor market survey with regard to Plaintiff in March of 2009. In order to prepare his report, he considered Plaintiff's abilities and physical restrictions, performed a transferable skills assessment based upon her work history and education, and considered the local labor market in Beaufort and Craven County.
46. Mr. Manning specifically identified seven positions which were cashier-type positions as well as retail sales clerk or sales-related positions, and per his testimony these types *Page 12 
of jobs are currently available and were available in 2007 and 2008. However, he did not address the standing requirements of such positions, which might not be consistent with Plaintiff's limitations of no prolonged standing. He also did not address any specific lifting requirements which might be associated with such positions.
47. Mr. Manning testified that "It is a tough labor market right now but in my opinion, with that reasonable and determined effort looking for jobs, entry level type jobs within her abilities, there is certainly a reasonable number of jobs available out there." He therefore concluded that Plaintiff should be able to obtain suitable employment.
48. Mr. Manning reviewed the documents presented by Plaintiff to show her job search. He testified that the Plaintiff's job search was "not a very determined job search." He further noted that it appeared that Plaintiff had applied for multiple jobs which clearly exceeded her physical restrictions, mostly for CNA-type positions. Mr. Manning testified that in his experience in researching jobs over the years as a vocational rehabilitation specialist, he is unaware of any CNA jobs that do not require lifting patients.
49. Mr. Manning's testimony has been considered and weighed in light of his expertise. Mr. Manning's testimony is also considered and weighed in light of the fact that he has never met with Plaintiff. Further, his inquiry regarding some of the positions he identified was limited, in that he did not gather specific information on standing and lifting requirements, which would confirm these positions met Plaintiff's restrictions.
50. Plaintiff's testimony that not all CNA-type positions would require lifting and exceed her physical restrictions is found to be not credible. The undersigned give greater weight to the testimony of Mr. Manning in this regard. However, positions such as sitters, which do not require the level of care of a CNA, may be within her physical restrictions. *Page 13 
51. Although Plaintiff's job search efforts may not have been "determined" as identified by Mr. Manning, her efforts comply with the requirements of the Employment Security Commission to seek employment, evidenced by the fact that she has been receiving unemployment benefits. Per her Discovery Responses, since the termination of her employment on November 26, 2008, Plaintiff has received $119.00 per week in unemployment benefits.
52. Although Plaintiff's testimony is deemed not credible in many aspects, after review of her documentation of seeking employment prior to the hearing, it is found that Plaintiff has made limited but reasonable efforts to locate suitable employment, up to the hearing date before the Deputy Commissioner. There is no evidence to address any effort (or lack of effort) on her part post-hearing.
53. Plaintiff is in need of vocational assistance to allow her to return to work. Plaintiff is well suited for vocational assistance which may help to lessen any disability which Plaintiff may have.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 22, 2007, Plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the course of her employment with the Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. As this claim was accepted via an NCIC Form 60, Plaintiff is entitled to a rebuttable presumption that ongoing medical treatment is related to the compensable injury. Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v.American Airlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), *Page 14 disc. review improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (per curiam), reh'g denied,360 N.C. 655, 638 S.E.2d 469 (2006). This presumption can be overcome by affirmative medical evidence tending to show that the claimed treatment or condition is not directly related to the compensable injury, and the same must be based upon competent medical evidence, such as expert opinion testimony. See Holley v.ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
3. "Where an expert witness bases his opinion as to causation of a complex medical question solely on the maxim post hoc ergo propterhoc (after it, therefore because of it), the witness provides insufficient evidence of causation". See Young v. Hickory Bus.Furniture, 353 N.C. 227, 232, 538 S.E.2d 912, 916 (2000), citingBlack's Law Dictionary 1186 (7th ed. 1999); See also Adams v.Metals USA, 168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (2005).
4. The testimony of Dr. Mahaney was based in part upon subjective complaints from Plaintiff, conjecture at times, and post hoc ergo propter hoc reasoning. The testimony of Dr. Delaney was based upon his objective findings or lack thereof. Based upon all findings of fact, Dr. Delaney's testimony is given greater weight than that of Dr. Mahaney, and establishes that Plaintiff's ongoing complaints of back pain can not be verified or linked to her compensable injury by accident, rather than to degenerative changes. Defendants have rebutted any presumption that Plaintiff continues to experience pain complaints related to the injury by accident. As such further treatment or evaluation at a pain clinic is not reasonably necessary for Plaintiff. See Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
5. The greater weight of the evidence fails to establish that Plaintiff has sustained any permanent impairment for which she would be entitled to a rating and compensation for her back due to her injury by accident of April 22, 2007. N.C. Gen. Stat. § 97-31. *Page 15 
6. Where the Plaintiff was terminated by her Employer while she was on light duty, and the Employer has not offered Plaintiff any other suitable employment within her restrictions, Defendants have failed to establish that Plaintiff constructively refused suitable employment, such that her benefits should be suspended. The fact that Plaintiff did not seek other jobs with the Employer prior to her termination is insufficient to meet the burden of showing that she refused employment "procured" for her as set forth in N.C. Gen. Stat. § 97-32.
7. The greater weight of the evidence fails to establish that Plaintiff was terminated for misconduct, unrelated to her workers' compensation claim, for which a non-disabled employee would likewise have been terminated. The evidence shows that Plaintiff's termination was directly related to her inability to return to her prior position as a certified nursing assistant. See Seagraves v.Austin Company of Greensboro,123 N.C. App. 228, 472 S.E. 2d. 397 (1996).
8. Although there are some credibility issues with Plaintiff, the greater weight of the evidence shows that she has engaged in reasonable efforts to secure employment, at least up to the hearing date before the Deputy Commissioner. Plaintiff has established that due to her age, education, and her restrictions, she has been unable to find suitable employment. Plaintiff has established that due to her injury by accident, she has been incapable of earning wages in the same or any other employment, such that she is entitled to receive ongoing total disability benefits. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
9. To the extent that Defendants may have reduced Plaintiff's wages while she was on light duty and Plaintiff was unable to earn the same wages as prior to her injury by accident since she could not return to her CNA position, Plaintiff is entitled to compensation for temporary partial disability benefits during that period pursuant to N.C. Gen. Stat. § 97-30. *Page 16 
10. Defendants are entitled to a credit for unemployment benefits paid to Plaintiff pursuant to N.C. Gen. Stat. § 97-42.1.
11. Plaintiff is entitled to receive reasonable vocational assistance to be provided by Defendants. N.C. Gen. Stat. §§ 97-2(19); 97-25
12. Considering credibility issues with Plaintiff and the difference of medical opinion regarding her condition, Defendants have not defended this matter without reasonable grounds, so as to justify an award of attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff's request for referral to a pain clinic is Denied.
2. Defendants shall pay Plaintiff compensation for temporary total disability at the rate of $222.01 per week from the date of her termination of employment by the Employer until further order of the Commission.
3. Defendants shall pay Plaintiff compensation at the rate of sixty-six and two-thirds percent (66 2/3%) of the difference between her pre-injury average weekly wage of $333.00 per week and the wages she was earning while on light duty after her return to work and prior to her termination as temporary partial disability benefits.
4. All benefits that have accrued shall be paid in a lump sum, subject to the credit and attorney's fee approved herein.
5. Defendants are granted a credit towards all TTD benefits due for unemployment benefits paid to Plaintiff. *Page 17 
6. An attorney's fee of twenty-five percent (25%) of the accrued benefits is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further order of the Commission.
7. Defendants shall provide Plaintiff with reasonable vocational assistance and training as may be reasonably needed to prepare her to return to gainful employment as close as possible to her pre-injury wage.
8. Defendants shall pay the cost.
This the 29th day of June, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1